James Lee WILLIAMS, Petitioner,

v.

M.H. GUPTON, Superintendent of Piedmont Correctional Center, and State of North Carolina, Respondents.

No. C–C–85–0003–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Jan. 31, 1986.

Michael S. Scofield, Wardlow, Knox, Knox, Freeman & Scofield, Charlotte, N.C., for petitioner.

James Lee Williams, pro se.

Barry McNeil, Asst. Atty. Gen., State of N.C., Dept. of Justice, Raleigh, N.C., for respondents.

## ORDER

ROBERT D. POTTER, Chief Judge.

### I. INTRODUCTION

Petitioner was convicted of second degree murder in Mecklenburg County Superior Court on December 9, 1982. After having unsuccessfully sought relief in the state courts, Petitioner filed his Application for Writ of Habeas Corpus on January 2, 1985. On March 6, 1985, Respondent filed its Answer and Motion to Dismiss.

Petitioner argues that he is being held unlawfully and in violation of the United States Constitution based upon three grounds. First, it is argued that the trial court violated Petitioner's fifth amendment right by placing the burden of proof of the defense of automatism upon him rather than requiring the prosecution to disprove automatism beyond a reasonable doubt. Second, Petitioner states that he was unconstitutionally denied effective assistance of counsel during his trial due to trial counsel's (a) failure to request a jury charge on voluntary manslaughter and failure to object to the trial court's charge which omitted voluntary manslaughter; and (b) failure to object to the burden of proof in the charge on "automatism" being placed on Petitioner. Third, it is argued that the trial court violated Petitioner's fourth amendment rights by denying his motion to suppress evidence illegally seized from his automobile.

### II. STATEMENT OF FACTS

The case involves Petitioner's conviction of second-degree murder of Eveline Griggs Rice in violation of N.C.Gen.Stat. § 14–17 (1981). Rice's body was found burning on the morning of Sunday, July 11, 1982. (Tr. 16–19.) Her death was caused by blunt-force trauma to the chest and abdomen. (Tr. 319.) Rice was last seen alive sitting on Petitioner's bed beside him, both nude, on the morning of Saturday, July 10, 1982, at around 5:30. Rice, Petitioner, and others had been drinking heavily at Petitioner's apartment since the very early hours of July 10, 1982. (Tr. p. 60–65.) Petitioner testified that he lost consciousness about dawn on that date and remembered only that he was drinking Jack Daniels Whiskey at the time. (Petitioner also testified that he had been taking medication.) When he awoke that afternoon at about 3:00, Rice was lying at the foot of the bed with blood around her mouth and chest. Having no recollection of committing any acts against Rice which could have caused her death, Petitioner wrapped the body in bed sheets, picked up around the apartment, and then went to work. Petitioner did not mention the incident to anyone at work, but returned home afterwards and loaded the body into the trunk of his car, and then drove around looking for a place to put it. Petitioner finally unloaded the body at a service station, doused it with gasoline, ignited it, then left. (Tr. pp. 405–415.)

The trial judge instructed the jury on possible verdicts of second-degree murder, involuntary manslaughter and not guilty. (Tr. pp. 451, 459–65.) The court also instructed the jury on the defense of automatism or unconsciousness. (Tr.pp.465–66.) The jury found Petitioner guilty of second-degree murder (Tr. p. 479) and he was sentenced to 13 years imprisonment.

### III. DISCUSSION

#### A. THE AUTOMATISM INSTRUCTION

The Court considers first the issue of whether Petitioner is entitled to habeas corpus relief on the ground that the trial

judge gave an improper instruction on the defense of automatism.[1]

Although there appears to be no case on point dealing with the issue of the constitutionality of requiring the defendant to carry the burden of proof on the defense of automatism, the United States Supreme Court held in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) that it is not unconstitutional to require the defendant to prove affirmative defenses, such as emotional disturbance. Further, the state may make insanity an affirmative defense to be proven by a defendant. *Cooper v. North Carolina*, 702 F.2d 481 (4th Cir.1983). These principles hold true although they may appear inconsistent with the rule that a person, under the due process clause, is presumed innocent until the state proves guilt beyond a reasonable doubt, *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), and that the prosecution's burden extends to every fact necessary to constitute the crime, *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

At the trial of the instant case, the judge instructed the jury that "[i]f the defendant was unable to act voluntary, he would not be guilty of any offense. The burden rests upon the defendant to establish this defense [automatism], unless it arises out of the state's own evidence, to the satisfaction of the jury." (Tr. p. 465–66.) Petitioner argues that this instruction was wholly contradictory with the judge's instruction that the state must prove voluntariness beyond a reasonable doubt, thus rising to the level of constitutional invalidity under the recent case of *Thomas v. Leeke*, 725 F.2d 246 (4th Cir.1984). In that case the Fourth Circuit Court of Appeals held an instruction placing the burden on the defendant to prove self-defense was improper because it resulted in confusing the jury where the court had also instructed the jury that the state must prove every element of the crime beyond a reasonable doubt. *Id.* at 250–51. Petitioner contends that if the jury followed a charge that the state prove beyond a reasonable doubt the Petitioner's voluntary act, then it must ignore the instruction that Petitioner establish the defense of automatism by a preponderance of the evidence. This contradiction, asserts Petitioner, is precisely what the court in *Thomas* forbade.

■ This argument, however, is insufficient for purposes of this action because the automatism instruction was not objected to at the trial of the case and was not raised on appeal, although defense counsel had ample opportunity. (Tr. pp. 469, 477–78.) The rule is that where a petitioner forfeits state review of a claim by failing to comply with state procedural requirements, then he is barred by procedural default unless he makes a sufficient showing of cause and prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977; *see also, Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976) ). Petitioner has forfeited his rights to state post-conviction review of this claim by his failure to comply with N.C.Gen.Stat. § 15A–1419(a) (1983) and N.C.R.App.P. 10(b)(2) (1984).

Petitioner argues that the novelty of the automatism issue at the time of the trial and defense counsel's failure to preserve the issue for appeal in state court constitutes sufficient cause and prejudice to bypass a procedural barrier to § 2254 relief. The case cited in support of this argument is *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), in which the Court held that sufficient cause may exist where a claim is so novel that counsel could not

---

**1.** The defense of automatism, or unconsciousness, refers to the situation where one engages in conduct which would otherwise be criminal, but is not guilty of a crime if he acted in a state of unconsciousness or semi-consciousness. *State v. Mercer*, 275 N.C. 108, 165 S.E.2d 328 (1969). Automatism should be distinguished from insanity, "for unconsciousness at the time of the alleged criminal act need not be the result of a disease or defect of the mind ..." and a "defendant found not guilty by reason of unconsciousness, as distinct from insanity, is not subject to commitment to a hospital for the mentally ill." *State v. Caddell*, 287 N.C. 266, 285, 215 S.E.2d 348 (1975).

reasonably be expected to raise it. In that case, the Court held that because the burden-shifting issue was novel in 1969, before its decision a year later in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), there was sufficient cause to excuse Ross' failure to raise the issue on direct appeal in the state courts and thus avoid a holding of procedural default. Petitioner argues here that in 1982 at the trial of the case, defense counsel had no reasonable basis upon which to object to the automatism charge. The recent case of *Thomas v. Leeke*, now supplies that basis, according to Petitioner, and its effect on the law constitutes sufficient cause to excuse Petitioner's failure to object to the instruction or otherwise preserve the issue for appeal. With respect to the prejudice requirement to avoid procedural default under *Wainwright*, Petitioner asserts that the trial court's instruction on automatism by itself is an indication that automatism was at issue; thus, Petitioner was prejudiced by an unconstitutional automatism instruction.

█ The Court is not persuaded by Petitioner's contentions and is of the opinion that sufficient showing of cause and prejudice is lacking and, therefore, this claim should be dismissed by procedural default. While it is true that under *Reed v. Ross*, the novelty of a claim may excuse counsel from raising it, it is also true that there exists no cause for default where raising an objection would be futile or where counsel fails to anticipate a change in the law despite an available basis of a constitutional claim. *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also, United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); and *Ho-*

*neycutt v. Mahoney*, 698 F.2d 213 (4th Cir.1983).

█ The case *sub judice* is not analogous to *Reed* because when the trial court instructed the jury in 1982, the issue of burden-shifting in criminal defenses had already been decided. *See Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); and *In re Winship, supra.* The Fourth Circuit Court of Appeals had ruled eight months prior to Petitioner's trial, in *Adkins v. Bordenkircher*, 674 F.2d 279 (4th Cir.1982), that the defense of alibi was not an affirmative defense since it negates every fact that the State is required to prove; thus, no burden of persuasion could be placed upon the defendant to prove alibi.[2] The *Adkins* decision provided Petitioner with a reasonable basis to raise the burden-shifting issue. Consequently, Petitioner has not shown the requisite cause to avoid procedural default.

Furthermore, Petitioner has not met the second requirement of avoiding procedural default, a showing of actual prejudice. In the first place, Petitioner was not even entitled to an instruction on automatism under North Carolina law. The North Carolina Supreme Court in *State v. Boone*, 307 N.C. 198, 297 S.E.2d 585 (1982), ruled that an instruction on automatism need not be given where the defense is predicated upon the defendant's own voluntary consumption of alcohol or drugs. The testimony at trial shows clearly that Petitioner voluntarily consumed a substantial amount of beer and whiskey before losing consciousness.

### B. PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL

The next issue before the Court is whether the Petitioner was deprived his right to

---

**2.** The court in *Adkins* also set forth the standard of review for a habeas corpus claim of an unconstitutional state court jury charge to be that the court can grant relief only if the Petitioner demonstrates the offending instruction is so oppressive as to render a trial fundamentally unfair. "The ailing instruction by itself [must] so [infect] the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

While Petitioner's argument under *Thomas* that the automatism instruction so contradicted the instruction on the State's burden of proof supports the contention that the jury could have been confused, this Court finds that possibility slight. More importantly, however, Petitioner has not made a showing that the alleged improper instruction rendered the trial fundamentally unfair. Thus, it cannot be said that the instruction infected the entire trial.

effective assistance of counsel by defense counsel's failure (1) to request an instruction on voluntary manslaughter and to object to instructions which omitted voluntary manslaughter, and (2) to object to the burden of proof in the automatism instruction being placed on the Petitioner.

■ Generally, the right to counsel means that a defendant is entitled to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court in *Strickland* adopted a two-pronged test for determining the adequacy of counsel. First, the Petitioner must show that defense counsel's performance fell below the standard of reasonableness, that is whether counsel's performance "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Strickland, supra,* 466 U.S. at 684–89, 104 S.Ct. at 2063–65. Second, Petitioner must show that but for the unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at ——, 104 S.Ct. at 2067. The trial error must be prejudicial to necessitate relief. *Goodson v. United States*, 564 F.2d 1071 (4th Cir.1977).

In his ineffective assistance claim Petitioner states that at the close of all the evidence, defense counsel requested a charge on voluntary manslaughter which the trial judge denied. However, the judge did allow the defense to put on more evidence which tended to show that the victim was taunting the Petitioner of his failure to sustain an erection and that as a result, Petitioner became upset. In considering this evidence, according to Petitioner, the jury could find that the killing was done in the heat of passion. However, defense counsel did not renew his request for an instruction on voluntary manslaughter and did not object to its omission. Therefore, contends Petitioner, but for defense counsel's unprofessional error, it is reasonably probable that the result of the trial would have been different.

Petitioner further asserts that if the Court determines that Petitioner waived the automatism claim by failing to preserve the issue for appeal in the state courts, then such failure on the part of defense counsel amounted to ineffective assistance.

The Court is of the opinion that Petitioner's contentions are insufficient for the relief he seeks to obtain. Petitioner has not shown that defense counsel's performance fell below constitutional standards of reasonableness and that he was actually prejudiced thereby.

■ At trial, the record indicates that the additional testimony given after discussion and denial of the request for the voluntary manslaughter instruction did not refer to Petitioner being "taunted," but that the victim was playing or teasing Petitioner and that he was not embarrassed, angry or frustrated. (Tr. pp. 445–46.) The trial court is required to instruct the jury on a lessor included offense only when the evidence tends to show the commission of such lessor include offense. *State v. Rinck*, 303 N.C. 551, 565, 280 S.E.2d 912 (1981). *See also, Hooper v. Evans*, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982) (instruction only when evidence warrants such an instruction). Petitioner offered no evidence that he killed Rice in response to her teasing about his impotence. The additional evidence was not sufficient to support the contention that Petitioner killed Rice because of provocation. Therefore, defense counsel did not render ineffective assistance by failing to request an unwarranted charge, or by objecting to a charge which omitted voluntary manslaughter.

Moreover, in ruling on Petitioner's motion for appropriate relief, Judge Frank W. Snepp addressed this issue despite the fact that it was not preserved for appeal and held that "[u]pon all the evidence it would have been a useless gesture to have lodged an objection of such [a] charge." Thus, this claim fails both the reasonable standards and prejudice prongs of *Strickland*.

■ With respect to Petitioner's assertion that defense counsel's failure to object to the burden of proof being placed upon Petitioner in the automatism charge resulted in ineffective assistance, the Court is of the opinion that the claim is lacking. At the trial of this case and now, North Carolina law places the burden of proving this defense upon the defendant. *State v. Caddell, supra* note 1.[3] As mentioned before, an instruction on automatism need not be given where the defense is predicated upon the defendant's own voluntary consumption of alcohol or drugs. Thus, defense counsel's failure to object to the automatism instruction shifting the burden of proof onto Petitioner was not ineffective assistance, but was within the range of competency demanded of attorneys in criminal cases.

### C. CLAIM OF FOURTH AMENDMENT VIOLATION

The Court finally considers the issue of whether the trial court violated Petitioner's rights under the fourth amendment by denying Petitioner's motion to suppress certain evidence. The Petitioner contended that certain evidence should be excluded from trial because it was illegally obtained in that the police exceeded the scope of Petitioner's signed consent to a search of his car.

In *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Court held that a habeas corpus petitioner could not collaterally attack his state conviction on grounds that illegal evidence was admitted at trial where he had been provided with an opportunity for full and fair litigation of the fourth amendment claim. *Id.* at 494, 96 S.Ct. at 3052. This Court's inquiry is, first, limited to whether state procedures afforded the Petitioner opportunity to raise the claim, and, this Court need not inquire further unless Petitioner alleges something impaired his opportunity. *See, Doleman v. Muncy,* 579 F.2d 1258 (4th Cir.1978).

■ Petitioner brought this same claim before the North Carolina Court of Appeals where it was addressed on the merits and rejected. *State v. William,* 67 N.C.App. 519, at 521–22, 313 S.E.2d 236 (1984). Further, Petitioner has not alleged any impairment of his opportunity to present the claim. Therefore, Petitioner's fourth amendment claim is not cognizable here.

### CONCLUSION

Petitioner is barred by procedural default from claiming the trial court's instruction on the defense of automatism was unconstitutional. Petitioner was not unconstitutionally denied effective assistance of counsel under the two-pronged test of *Strickland.* Finally, Petitioner's fourth amendment claim is not cognizable for habeas review because state procedures afforded the opportunity for full and fair litigation of that claim.

IT IS, THEREFORE, ORDERED that this Petition be DISMISSED.

---

**3.** The United States Supreme Court held in *Patterson, supra,* 432 U.S. at p. 206–07, 97 S.Ct. at p. 2324–25, that a New York law which required the defendant in a prosecution for second-degree murder to prove by a preponderance of the evidence the affirmative defense of extreme emotional disturbance did not violate due process guarantee of the fourteenth amendment.

The automatism defense, like other defenses of incapacity, rests on the premise that even if the defendant did the act, he did not do it in a state of consciousness, thus it was not voluntary. Voluntariness is an element of a criminal act. *State v. Jerrett,* 309 N.C. 239, 307 S.E.2d 339 (1983). The defense of insanity is very similar in that it is based on the same premise, "the defendant did the acts, but should not be convicted because the requisite mental element was not present." *State v. Caddell, supra,* 287 N.C. at 289, 215 S.E.2d 348. The same burden which is placed upon the defendant claiming insanity is placed upon the defendant claiming automatism, that is, to prove to the satisfaction of the jury his defense, and thus negative the requisite mens rea. In light of these cases, and the given similarity between insanity and automatism, the Court is of the opinion that the holding of *State v. Caddell* is still good law and unlikely to be reversed.